NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHRISTIE Y. HERBERT,**
*Petitioner,*

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
*Respondent.*

---

2014-3011

---

Petition for review of the Merit Systems Protection Board in Nos. AT0752120776-I-1.

---

Decided: April 14, 2014

---

CHRISTIE Y. HERBERT, of Winston-Salem, North Carolina, pro se.

ROBERT C. BIGLER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Assistant Attorney General, BRYANT G. SNEE, Acting Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before LOURIE, SCHALL, and MOORE, *Circuit Judges.*

PER CURIAM

Christine Y. Herbert petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained the action of the Department of Health and Human Services ("HHS" or "agency") removing her from her position as a Health Insurance Specialist with the agency's Atlanta, Georgia, Division of Medicare Health Plans Operations. *Herbert v. Dep't of Health and Human Servs.*, No. AT-0752-12-0776-I-1 (M.S.P.B. Sept. 6, 2013) ("*Final Decision*"). We *affirm*.

DISCUSSION

I.

Ms. Herbert began working for HHS as a Health Insurance Specialist in Atlanta in April of 2010. While employed at the agency, she was allowed to work "episodic or scheduled flexiplace," so long as her performance was at an acceptable level and she was not the subject of any disciplinary actions. Ms. Herbert was approved for flexiplace approximately 35 times prior to November of 2011. On November 8, 2011, however, she was issued a leave warning letter, which was considered a disciplinary action for purposes of denial of flexiplace requests. On January 17, 2012, Ms. Herbert relocated her residence from Atlanta to Winston-Salem, North Carolina, and after that date she did not report to work.

Ms. Herbert was issued a leave-restriction letter on March 1, 2012, and on April 9, 2012, she was issued a proposed 14-day suspension for being absent without leave ("AWOL") for approximately 600 hours. The AWOL charge was sustained, and Ms. Herbert was suspended from work. The suspension ended on June 7, 2012.

Ms. Herbert did not return to work at the conclusion of her suspension. Instead, she began requesting leave without pay ("LWOP") on a daily basis on account of what she described as "insufficient annual leave balance, which has been adversely affected by unresolved work challenges and ongoing concerns." Dr. Teresa Kries, Ms. Herbert's supervisor, denied the LWOP requests, each time informing Ms. Herbert that she was needed at work and that her failure to report for work would be charged to AWOL. Dr. Kries also informed Ms. Herbert of the possibility of requesting Family Medical Leave Act ("FMLA") leave and of the requirements for doing so. Ms. Herbert responded, however, that FMLA leave was not appropriate for her request.

On June 14, 2012, Dr. Kries sent Ms. Herbert a letter offering her a medical examination. The letter also informed Ms. Herbert that HHS would pay the cost of the examination, as well as any travel expenses related to the examination. Ms. Herbert declined the offer, stating that her leave request was "not related to any medical needs or requirements."

On July 3, 2012, the agency issued Ms. Herbert a notice of proposed removal, charging her with 150 hours of AWOL from June 7 to July 2, 2012. Ms. Herbert waived her right to submit an oral response to the proposed removal. In a written response, though, she stated that she "did not want to grieve" the proposed removal internally. On August 15, 2012, Gloria Parker, HHS's Associate Regional Administrator, issued a letter sustaining the AWOL charge and removing Ms. Herbert from her position, effective August 20, 2012.

Ms. Herbert appealed her removal to the Board. Following a hearing, the administrative judge ("AJ") to whom the appeal was assigned rendered an initial decision in which he affirmed HHS's action removing Ms. Herbert from her position. *Herbert v. Dep't of Health and Human*

*Servs.*, No. AT-0752-12-0776-I-1 (M.S.P.B. Nov. 15, 2012) ("*Initial Decision*"). The AJ found that the agency had established the AWOL charge by a preponderance of the evidence. *Initial Decision* at 7. The evidence showed that, as noted above, when Ms. Herbert requested LWOP, Dr. Kries each time responded with an email denying the LWOP and informing her that she was being charged with AWOL. *Id.* at 6. Although the record also showed that AWOL was not accurately reflected in Ms. Herbert's master leave history or in her leave and earnings statements, the AJ found that she knew those statements were inaccurate and thus could not have reasonably relied on them. The AJ also found that the agency had established a nexus between Ms. Herbert's conduct (being AWOL) and the efficiency of the service. *Id.* at 7. Finally, he determined that, in imposing the penalty of removal, the agency had properly considered the relevant *Douglas* factors, *see Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981), and that it had demonstrated that the penalty was reasonable. *Initial Decision* at 8–9. Ms. Herbert petitioned the Board for review of the *Initial Decision*, which the Board affirmed in its *Final Decision*. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

Our scope of review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998).

### III.

On appeal, Ms. Herbert does not dispute that she was absent from work. Rather, she argues (1) that she was subjected to unfair labor practices, representing multiple violations of collective bargaining regulations; and (2) that the penalty of removal was too severe. We address these contentions in turn.

### A.

Regarding the first point, Ms. Herbert states in her opening brief that HHS's "internal records and other additional evidence" support her claim that she "was aggrieved by the agency." However, in her opening brief she fails to point to any specific record evidence to support these allegations. Apparently recognizing the deficiency in her opening brief, Ms. Herbert filed a reply brief and moved to supplement the record before us with additional exhibits. Although it is unclear which of the additional exhibits were before the Board, we granted the motion to supplement the record, recognizing that Ms. Herbert is a *pro se* litigant.

We have carefully considered both of Ms. Herbert's briefs and the exhibit material before us. Having done so, we conclude that Ms. Herbert has failed to demonstrate that HHS's action removing her for AWOL was somehow tainted by improper agency action. Specifically, Ms. Herbert has failed to connect points 2–25 in her reply brief to any agency impropriety in connection with her removal. Point 1 ("The Master Leave Records of respondent on behalf of petitioner, as well as Leave and Earnings statements for the Petitioner, neither reflect, nor support, AWOL status for the petitioner, as asserted by the agency, relative to the adverse employment action taken.") is the only point actually touching on her removal. We have considered the evidence Ms. Herbert relies on for this point, but agree with the Board and the AJ that any ambiguity from these records was resolved by Dr. Kries's

responses to Ms. Herbert's leave requests, making it clear that Ms. Herbert was deemed to be AWOL. Accordingly, we see no error in the Board's conclusion as to the AWOL charge, and see nothing supporting Ms. Herbert's allegation of unfair labor practices.

B.

In claiming that the penalty of removal was too severe, Ms. Herbert makes two main arguments: (1) that the agency took no action to resolve the "concerns" that she alleged led her to be absent from work; and (2) that there were extenuating circumstances that excused her absences. As far as (1) is concerned, Ms. Herbert appears to be referring to the "unresolved work challenges and ongoing concerns" that she raised when she did not return to work at the end of her 14-day suspension. She also appears to be referring to certain matters that arose in connection with employee-assistance counseling she received. As best as we can understand it, (2) is based on the following statement in Ms. Herbert's opening brief: "There were also extenuating personal complaint issues of petitioner unrelated to petitioner's employment with the agency, which were related factors in the circumstances leading to the adverse action taken by the agency, due to petitioner exercising her personal right to hold a private individual accountable for dishonest, disingenuous, malicious, unethical, unprofessional behavior."

We reject Ms. Herbert's argument that the penalty of removal was unreasonable. First, as noted above, when Ms. Herbert refused to return to work after the completion of her suspension, Dr. Kries made efforts to accommodate what she believed to be Ms. Herbert's concerns. Dr. Kries informed Ms. Herbert of the option of requesting FMLA leave, and she offered a medical examination at agency expense, with any travel expenses related to the examination to be borne by the agency. Ms. Herbert rejected these offers, however. Second, in imposing the

penalty of removal, Ms. Parker considered what she believed to be the pertinent factors on which to base the agency's decision: (1) the nature and seriousness of the offense; (2) the adverse impact of Ms. Herbert's conduct on the efficiency of the agency; (3) Ms. Herbert's two years of past service; (4) Ms. Herbert's past disciplinary record, including her 14-day suspension for being AWOL; (5) the nature of Ms. Herbert's position of Health Insurance Specialist; and (6) Ms. Herbert's potential for rehabilitation. These factors support the conclusion that the penalty of removal was reasonable.

To the extent that Ms. Herbert urges that her removal was unreasonable on account of "ongoing concerns" and extenuating circumstances, her claim, which we have described above, amounts to nothing more than a vague, unsupported assertion. As such, it does not provide any reason to call into question the decision of the Board as to the reasonableness of the penalty. Finally, as far as the factors considered by Ms. Parker in the removal action are concerned, Ms. Herbert argues that her two years of tenure was an inappropriate factor to consider. This contention is without merit. *Douglas* expressly lists "the employee's past work record, including length of service" as an appropriate factor to consider. *See Douglas*, 5 M.S.P.R. at 305.

IV.

For the foregoing reasons, the final decision of the Board is affirmed.

**AFFIRMED**

No costs.